J-S16011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                               :          PENNSYLVANIA
                               :
          v.                   :
                               :
                               :
                               :
SAMUEL COAXUM                  :
                               :
          Appellant            :  No. 1580 EDA 2023

Appeal from the PCRA Order Entered June 9, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0014278-2014

BEFORE:  STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:               **FILED SEPTEMBER 10, 2024**

Appellant, Samuel Coaxum, who is serving a judgment of sentence of 160-320 months' imprisonment for burglary, criminal trespass, and aggravated assault, appeals from an order denying relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541-9546.  We affirm.

This Court summarized the evidence as follows in Appellant's direct appeal:

> Appellant lived for a time with his paramour, Shirlene Myatt ("Shirlene"), in a house she owned, but was no longer living with her as of the late summer or early fall of 2014.  On September 3, 2014, Shirlene obtained a protection from abuse ("PFA") order protecting her from Appellant.  Prior to that, in October of 2013, in response to Shirlene's emergency petition for relief from abuse, the trial court ordered Appellant evicted from Shirlene's home. Nonetheless, Appellant vandalized Shirlene's home on November 30, 2014.  Shortly thereafter, Shirlene exchanged homes with her son, Eugene Myatt ("Eugene").  Eugene changed the mechanical

---

[*] Former Justice specially assigned to the Superior Court.

lock on Shirlene's front door and changed the code on the code lock. On December 4, 2014, Eugene arrived at Shirlene's home with his seven-year-old son, M.M., to find the new mechanical lock broken. Later, Eugene discovered a damaged rear window that no longer closed. Upon entering the home, Eugene found Appellant on the couch. Appellant did not have permission to be there. After Eugene demanded that Appellant leave, Appellant reached under the carpet and retrieved a knife from under the carpet and "came at" Eugene and M.M. brandishing the knife. The knife was one of Shirlene's kitchen knives, and it was 14 inches long with a blue handle and an 8-inch blade. Eugene stood in front of M.M., took M.M.'s baseball bat (Eugene and M.M. had been playing baseball just prior to the incident), and raised it in the direction of Appellant. Appellant was approximately three feet from Eugene during the incident. Appellant did not "lunge," but he told Eugene he wanted to stab and slice him up. Appellant then removed his cell phone from his pocket, called police, and told them a man was in his house brandishing a bat.

When police arrived, Eugene was on the front porch holding a baseball bat and arguing with Appellant, who was still inside. Police directed Eugene to drop the bat, which he did. Eugene then produced copies of the PFA and eviction orders, and police verified the existence of a protective order via the National Crime Information Center.

Testifying in his own defense, Appellant said that the house was his, and that he got in by entering the code into the code lock. He said he did not brandish the knife and had never seen it before. Appellant produced an electric bill addressed to him at Shirlene's house covering the service period from July through December of 2014. He also said a third party, not Shirlene, owned the house,[1] and that Shirlene caused the damage that occurred on November 30, 2014. Appellant denied that the mechanical deadbolt locks were ever changed, and he claimed he left the deadbolt unlocked earlier that day. Appellant acknowledged making several threatening phone calls to Shirlene telling her not to testify at the trial in this matter. He claimed he did not want her to support Eugene, her son, in his lies.

---

[1] According to the trial transcript, Appellant testified that "Carla Magee" owned the house. N.T., 7/31/15, at 24. As discussed below, the correct name of this individual appears to be Carla McKie.

*Commonwealth v. Coaxum*, 2020 WL 359712, *1-2 (Pa. Super., Jan. 21, 2020) (citations omitted). Furthermore, Officer Allan Gilmore, the police officer who responded to Eugene's 911 call, testified that

> when he arrived at the house[,] he observed Eugene holding a bat. Eugene complied with the officer's instruction to drop the bat. Officer Gilmore further testified that Eugene gave him the eviction notice and the protection order. Finally, Officer Gilmore testified that he spoke with [Appellant], who told him that he did not have keys to the house or permission to be inside the house. Officer Gilmore recovered a large blue knife that Eugene positively identified as the knife that [Appellant] had in his fist.

Trial Court Opinion, 3/4/19, at 2 (citations omitted).

Following a non-jury trial, the court found Appellant guilty of burglary, criminal trespass, aggravated assault and other misdemeanors.[2] On December 2, 2016, the court imposed sentence. On direct appeal, this Court rejected Appellant's challenge to the sufficiency of the evidence and affirmed his judgment of sentence. Our Supreme Court denied Appellant's petition for allowance of appeal.

Appellant filed a timely PCRA petition and an amended, counseled PCRA petition. The amended PCRA petition alleged that trial counsel was ineffective for failing to call Appellant's Chester County parole officer as a witness to establish that Appellant's parole address was the house where his altercation with Eugene took place. Attached as an exhibit to the amended petition was

_____

[2] Appellant does not mention these misdemeanors in this appeal or contend that he is entitled to PCRA relief from them.

- 3 -

a deed dated June 22, 2004 that transferred title to the house from Lorraine Harmon to Hasani Bakari and Carla McKie. The text of the amended petition did not expressly refer to the deed.

On June 9, 2023, the PCRA court denied PCRA relief. Appellant filed a timely notice of appeal, and the PCRA court appointed new counsel to represent Appellant. The court filed a Pa.R.A.P. 1925 opinion without ordering Appellant to file a statement of matters complained of on appeal.

In this Court, new counsel raises two issues that were not in Appellant's original or amended PCRA petitions:

> A. Did the PCRA court err in dismissing [A]ppellant's PCRA petition, where trial counsel was ineffective for failing to call Carla McKie to testify to establish that she was the owner of the home (and failure to produce copy of the deed), not Shirlene Myatt or Eugene Myatt, therefore [A]ppellant had permission to be in the home?

> B. Did the PCRA court err in dismissing [A]ppellant's PCRA petition, as PCRA counsel was ineffective for failing to investigate and obtain an affidavit from Carla McKie indicating that she was the owner of the home, not Shirlene Myatt or Eugene Myatt, therefore [A]ppellant had permission to be in the home?

Appellant's Brief at 7.[3]

Our standard of review for an order dismissing a PCRA petition is as follows:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the

---

[3] Although Appellant alleged in his amended PCRA petition that trial counsel was ineffective for failing to call Appellant's Chester County parole officer as a witness, he has abandoned that claim in this appeal.

record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Staton***, 184 A.3d 949, 954 (Pa. 2018).

These issues present layered claims of ineffectiveness against PCRA counsel based on her failure to advance an ineffectiveness claim against trial and appellate counsel. To be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in section 9543(a)(2), which includes ineffective assistance of counsel. ***See*** 42 Pa.C.S.A. § 9543(a)(2)(i). To prevail on an ineffective assistance of counsel claim, the petitioner has the burden to prove: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." ***Commonwealth v. McCready***, 295 A.3d 292, 298-99 (Pa. Super. 2023) (cleaned up).

Because this is Appellant's first PCRA petition, he may raise claims of PCRA counsel's ineffectiveness in this appeal. ***Commonwealth v. Bradley***, 261 A.3d 381, 401 (Pa. 2021) ("after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, [a petitioner may] raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal").

"Whe[n] a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." **Commonwealth v. Parrish**, 273 A.3d 989, 1004 n.11 (Pa. 2022). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the **first attorney** that the petitioner asserts was ineffective did, in fact, render ineffective assistance of counsel." **Commonwealth v. McCready**, 295 A.3d 292, 299 (Pa. Super. 2023) (emphasis in original). Our Supreme Court has provided that, "[i]n some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims," though, "in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter." **Bradley**, 261 A.3d at 402. In support of a remand for an evidentiary hearing on PCRA counsel's ineffectiveness, a petitioner is "required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness." **Id**. The petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." **Commonwealth v. Wholaver**, 177 A.3d 136, 144–45 (Pa. 2018).

The first layer of Appellant's claim of ineffective assistance is that trial counsel was ineffective for failing to call a witness, Carla McKie, who allegedly would have established that she owned the house and that Appellant was

- 6 -

privileged to enter it at the time of the altercation with Eugene.  Alternatively,

Appellant asserts that trial counsel was ineffective for failing to introduce the

deed to the house in McKie's name, which Appellant claims would have been

self-authenticating and which would have "irrefutably proved that the

appellant was lawfully present, and therefore did not commit any burglary."

Appellant's Brief at 20.  The second layer is PCRA counsel's alleged failure to

challenge trial counsel's failure to call McKie.

The Crimes Code defines the crime of burglary as follows:

**§ 3502. Burglary.**

(a) Offense defined.--A person commits the offense of burglary if,
with the intent to commit a crime therein, the person:

(1)(i) enters a building or occupied structure, or separately
secured or occupied portion thereof, that is adapted for overnight
accommodations in which at the time of the offense any person is
present and the person commits, attempts or threatens to commit
a bodily injury crime therein;
....

(b) Defense.--It is a defense to prosecution for burglary if any of
the following exists at the time of the commission of the offense:

....

(3) The actor is licensed or privileged to enter.

18 Pa.C.S.A. § 3502(a)(1)(i).  Section 3502 provides that license and privilege

are affirmative defenses for which the defendant shoulders the burden of

proof.  It is permissible to require the defendant to prove these elements,

because "the burden of proving an affirmative defense that relieves the

accused of criminal responsibility, but does not negate an element of the offense charged[,] may be placed on the defendant."

During trial, Appellant testified that he had the right to be in the house, because McKie was the owner, and an electric bill for the same time period as the incident with Eugene was addressed to him at the house. The Commonwealth demonstrated, however, that Shirlene obtained a PFA order against Appellant and obtained an emergency order evicting him from the house in October 2013. On November 30, 2014, Appellant vandalized the house, causing Shirlene to exchange homes with Eugene. Eugene changed the mechanical lock on Shirlene's front door and changed the code on the code lock. Four days later, on December 4, 2014, Appellant disabled the lock, broke a window, entered the house, obtained a large knife from the kitchen, and lay in wait on the couch. Eugene arrived home, confronted Appellant, and called the police. Appellant admitted to the police officer who responded to Eugene's call that he did not have keys to the house or permission to be inside. We held on direct appeal that this evidence was sufficient to sustain Appellant's conviction for burglary. We rejected Appellant's argument that he was privileged to enter the house under Section 3502(b)(3):

> Appellant argues as follows: "[T]he Commonwealth offered no testimony to dispute Appellant's contention that he, being privileged to enter the home, typed a code into another lock on the front door and gained entry into the home in this manner." … The record does not support this assertion. Eugene testified that he changed the mechanical lock and found it broken; that he changed the code; and that he found a damaged window in the rear of the home. The trial court was entitled to believe Eugene

- 8 -

and disbelieve Appellant's contention that he was privileged to enter the home and did so by using a valid code. This evidence, viewed in a light most favorable to the Commonwealth, supports a finding that Appellant was not privileged to enter the home; that he was unable to enter through the front door because he did not have the code; and that he broke in through a window.

*Coaxum*, 2020 WL 359712, at *3.

Appellant now claims that trial counsel was ineffective for failing to introduce McKie's deed to the house, because this document would have been "self-authenticating" and by itself would have established his license or privilege[4] to be in the house. Appellant's Brief at 20. Appellant appears to believe that the deed was self-authenticating under Pa.R.E. 902, which provides in relevant part:

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

**(1) Domestic Public Documents That Are Sealed and Signed.** A document that bears:

(A) a seal purporting to be that of the United States; any state, district, commonwealth, territory, or insular possession of the United States; the former Panama Canal Zone; the Trust Territory of the Pacific Islands; a political subdivision of any of these entities; or a department, agency, or officer of any entity named above; and

(B) a signature purporting to be an execution or attestation.

**(2) Domestic Public Documents That Are Not Sealed But Are Signed and Certified.** A document that bears no seal if:

---

[4] Appellant's brief states that the deed would have established his "lawful presence" in the house. Read in context, this phrase appears equivalent to an assertion that Appellant had some license or privilege to be in the house under Section 3502(b)(3).

(A) it bears the signature of an officer or employee of an entity named in Rule 902(1)(A); and

(B) another public officer who has a seal and official duties within that same entity certifies under seal--or its equivalent--that the signer has the official capacity and that the signature is genuine.

….

**(4) Certified Copies of Public Records.** A copy of an official record--or a copy of a document that was recorded or filed in a public office as authorized by law--if the copy is certified as correct by:

(A) the custodian or another person authorized to make the certification; or

(B) a certificate that complies with Rule 902(1), (2), or (3),[5] a statute or a rule prescribed by the Supreme Court.

A certificate required by paragraph (4)(B) may include a handwritten signature, a copy of a handwritten signature, a computer generated signature, or a signature created, transmitted, received, or stored by electronic means, by the signer or by someone with the signer's authorization. A seal may, but need not, be raised.

*Id.* The deed appended to Appellant's PCRA petition does not have any certificate, certification, seal or signature required under these provisions. Therefore, it would not have been self-authenticating at trial, and extrinsic evidence would have been necessary to authenticate it.

Appellant also argues that the deed and McKie's testimony, viewed collectively, would have established his license or privilege to be in the house. We disagree.

_____

[5] Pa.R.E. 902(3) concerns foreign public documents and is not relevant here.

To establish ineffectiveness for failing to call a potential witness to testify at trial, the petitioner must prove that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial

*Commonwealth v. Matias*, 63 A.3d 807, 810-11 (Pa. Super. 2013). To establish prejudice, the petitioner "must show how the [potential witness's] testimony would have been beneficial under the circumstances of the case" and "helpful to the defense" such that the absence of the testimony denied the petitioner a fair trial. *Id.* at 811.

Appellant's brief fails to satisfy this five-part test. Appellant fails to assert that McKie exists and that she was available or willing to testify for Appellant. Furthermore, Appellant fails to demonstrate that the absence of her testimony was so prejudicial as to deny Appellant a fair trial. We held on direct appeal that Appellant failed to demonstrate that he was privileged to enter the house. McKie's testimony would not have strengthened Appellant's claim of license or privilege. Appellant only claims that McKie would have testified that she is the owner of the house, not that McKie would have testified that she gave him any license or privilege to enter. For example, Appellant argues:

> [T]he Commonwealth made [it] seem that the home was either deeded to either Eugene Myatt or Shirlene Myatt, and therefore when Eugene Myatt testified that the appellant did not have

- 11 -

permission to be in the house, that was completely inaccurate. Indeed, this was the appellant's own home, and Ms. McKie's testimony and/or copy of the deed would have put that issue to rest at trial.

Appellant's Brief at 21. Appellant states only that McKie's testimony and the deed would have established that McKie owns the house, not that McKie consented to Appellant's entry. **See Corbin**, 446 A.2d at 310 ("license or privilege" element similar to defense of consent). At another point, Appellant argues:

[W]hen Eugen[e] Myatt testified that the home was either in his name or in his mother's name, and that the appellant did not have permission to be in the home, this was false. Stated differently, permission was certainly not his to give. Therefore, an affidavit signed by Ms. McKie certainly would have forced the PCRA to be granted.

**Id.** at 24. Once again, Appellant states only that Eugene could not give or deny permission to enter because "permission was … not his to give," *i.e.*, because McKie owned the house. Appellant does not argue that McKie would have testified that she gave Appellant consent to enter.[6]

Thus, Appellant fails to establish ineffective assistance of trial counsel regarding the burglary charge, which in turn defeats his claim of ineffective assistance of PCRA counsel regarding this charge.

_____

[6] Appellant also argues that while his original PFA order prohibited any contact with Shirlene Myatt and had an eviction provision, the court had amended the order before Appellant's entry into the house to remove the eviction provision and to modify the order to "no contact." The fact that the court changed the order to "no contact" does not suggest in any way that Appellant had some license or privilege to enter the house.

- 12 -

Turning to Appellant's conviction for criminal trespass, the Crimes Code defines this offense as follows:

**§ 3503. Criminal trespass.**

(a) Buildings and occupied structures.--

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:
....

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

18 Pa.C.S.A. § 3503 (a)(1)(ii).  The Commonwealth has the burden of proving that the defendant knows he was not licensed or privileged to make entry. Evidence of entry by force may be sufficient to establish the intruder's criminal intent.  ***Commonwealth v. Gordon***, 477 A.2d 1342, 1348 (Pa. Super. 1984). In addition, lack of privilege may be proved from the surrounding circumstances.  ***Id.***

As discussed above, Appellant fails to assert that McKie exists and that she was available or willing to testify for Appellant.  Appellant also fails to demonstrate that McKie's testimony or the deed would have negated any element of criminal trespass.  The Commonwealth proved that Appellant forcibly entered the house and had an outstanding PFA order at the time of his entry, thus establishing the knowledge element of criminal trespass, *i.e.*, his knowledge that he was not licensed or privileged to enter.  At most, McKie's testimony or the deed merely would have established that she was the owner of the house.  However, McKie's testimony would not have disproved the

- 13 -

knowledge element of criminal trespass, since McKie would not have testified that she permitted him to enter. Accordingly, Appellant fails to establish ineffective assistance of trial counsel regarding the criminal trespass charge, which in turn defeats his claim of ineffective assistance of PCRA counsel concerning this charge.

Finally, we address the charge of aggravated assault under 18 Pa.C.S.A. § 2702(a)(4), which applies where the defendant "attempts to cause … bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4). Appellant argues that trial counsel was ineffective because evidence of McKie's deed or testimony would have shown that Appellant was lawfully in the home and thus had the right to defend himself against Eugene without having any duty to retreat. Once again, this argument fails because Appellant fails to assert that McKie exists and that she was available or willing to testify for Appellant. In addition, as stated above, McKie's testimony and the deed would not have demonstrated that McKie gave Appellant license or privilege to enter. This defeats his argument that he was lawfully present in the home and had the right to defend himself against Eugene. Therefore, Appellant fails to establish ineffective assistance of trial counsel regarding the aggravated assault charge, which in turn defeats his claim of ineffective assistance of PCRA counsel.

For these reasons, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>9/10/2024</u>